[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 02, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15237
Non-Argument Calendar

_____

Agency No. A97-629-976

PIERRE JOSEPH MOSCOSO POLICK,
a.k.a. Pierre Joseph Moscoso-Polick,
SANDRA BEATRIZ MOSCOSO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(July 2, 2008)**

Before BARKETT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Petitioners Sandra Beatriz Moscoso ("Moscoso") and Pierre Joseph

Moscoso-Polick ("Pierre"), through counsel, seek review of the Board of

Immigration's ("BIA's") order denying their motion to remand and affirming the

Immigration Judge's ("IJ's") denial of their application for asylum and

withholding of removal under the Immigration and Nationality Act ("INA") and

relief under the United Nations Convention Against Torture and Other Cruel,

Inhuman and Degrading Treatment or Punishment ("CAT"), 8 U.S.C. §§ 1158,

1231(b)(3), 8 C.F.R. § 208.16(c).  The Petitioners argue on appeal that they are

entitled to asylum based upon the cumulative effects of all of the events that

occurred both before and after their one-year stay in the United States,[1] and that the

IJ erred by considering only the events that the Petitioners experienced following

their return to Peru.  For the reasons set forth more fully below, we deny the

petition for review.

I.

Moscoso and Pierre, natives and citizens of Peru, were admitted to the

United States on or about April 22, 2003, as a nonimmigrant visitors for pleasure.

On January 7, 2004, the Department of Homeland Security ("DHS") issued them

separate Notices to Appear ("NTA"), charging that they were subject to removal

---

[1] Pierre left for the United States in February 2001, and Moscoso later joined him in May 2001.  The Petitioners returned to Peru in February 2002.

under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as nonimmigrants who remained in the United States for a time longer than permitted. On April 21, 2004, Moscoso[2] filed an application for asylum, withholding of removal, and CAT relief. Moscoso indicated on the application that she sought relief based upon her political opinion and membership in a particular social group.

At the removal hearing, Moscoso testified that she worked for the Program of Support for the Repopulation and Development of Emergency Zones ("PAR"), a government organization in charge of gathering census information from poor people in "emergency zones." Moscoso stated that, on separate occasions, she received threatening calls, had rocks thrown at her, and had a machine gun pointed at her head. As a result of those events, she and Pierre decided to leave Peru in 2001. Moscoso remained in Peru without incident for approximately two months before she joined Pierre in the United States. The Petitioners stayed in the United States for approximately one year. After their return to Peru, some unidentified people on a large motorcycle taxi followed the Petitioners, insulting them and hitting the Petitioners' car with a large piece of iron. In November 2002, the Petitioners fired their maid because they discovered that the maid was stealing from them, and, shortly afterwards, the Petitioners noticed that the tire bolts of

---

[2] Moscoso is the lead respondent; however, Pierre filed the original asylum application. At the hearing on May 19, 2004, Petitioners admitted to the allegations in the NTA and conceded removability.

their car had been loosened. The Petitioners later learned that the maid was connected to a gang. Finally, Moscoso described an incident at a gas station where "some guys," whom Moscoso described were terrorists, beat, kicked, and insulted the Petitioners. The Petitioners returned to the United States in April 2003.

The IJ denied the Petitioners' application for asylum, withholding of removal and CAT relief, and ordered Moscoso and Pierre removed to Peru. Among other things, the IJ found that:

> The respondent, Mrs. Moscoso, lived in Lima, Peru, before she traveled to the United States in May 2001. While in Peru[,] the respondent, Mrs. Moscoso, encountered no problems. It appeared that the problem, if any, is localized in the very poor area where she worked and not nationwide. The respondent, by law, is required to relocate to a safe area and she appeared to have resided [] safely in Lima, Peru, and therefore, the respondents can relocate elsewhere in Peru without encountering the problems from these elements previously identified by the Court.

The BIA dismissed the Petitioners' appeal and denied their motion to remand. The BIA determined that the Petitioners were not entitled to asylum because they: (1) failed to establish that any of the experiences they described constituted persecution on account of a protected ground; (2) failed to establish that Moscoso was targeted due to imputed political opinion; (3) failed to show how "PAR" satisfied the requirements for recognition as a particular social group; and (4) failed to challenge the IJ's finding that they could safely relocate within Peru. The BIA also found that the Petitioners were not entitled to withholding of removal

4

and noted that the Petitioners had not challenged the IJ's denial of CAT relief.

II.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Al-Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Insofar as the BIA adopts the IJ's reasoning, we review the IJ's decision as well. Id. (citation omitted).

To the extent that the BIA's decision was based on a legal determination, our review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). The BIA's factual determinations are reviewed under the substantial evidence test. Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). Under the substantial evidence test, we cannot find or consider "facts not raised in the administrative forum, nor can [it] reweigh the evidence from scratch." Id. We must affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. We will reverse the agency's factual determinations only where the record compels reversal. Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). The record is reviewed in the light most favorable to the BIA's decision, and all reasonable inferences are drawn in favor of that decision. Forgue, 401 F.3d at 1286.

The Attorney General may grant asylum if an alien is a refugee within the

5

meaning of the INA.  <u>Mejia v. U.S. Attorney Gen.</u>, 498 F.3d 1253, 1256 (11th Cir.

2007).  The INA defines "refugee" as:

> [A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A).  The alien bears the burden to demonstrate "(1) past

persecution on account of a statutorily protected ground or (2) a well-founded fear

of future persecution on account of a protected ground."  <u>Mejia</u>, 498 F.3d at 1256.

A showing of past persecution creates a rebuttable presumption of a

well-founded fear of future persecution.  <u>Sepulveda v. U.S. Attorney Gen.</u>, 401

F.3d 1226, 1231 (11th Cir. 2005).  That presumption may be rebutted if the

government demonstrates by a preponderance of the evidence either that:

(1) "[t]here has been a fundamental change of circumstances such that the

applicant no longer has a well-founded fear of persecution in the applicant's

country," or (2) "[t]he applicant could avoid future persecution by relocating to

another part of the applicant's country of last habitual residence, and under all the

circumstances, it would be reasonable to expect the applicant to do so."  8 C.F.R.

§§ 208.13(b)(1)(i)(A)-(B), 208.13(b)(1)(ii).

6

"If the applicant fails to demonstrate past persecution, an applicant may still establish asylum based upon proof of a well-founded fear of future persecution." De Santamaria v. U.S. Attorney Gen., No. 06-16221, manuscript op. at 13 (11th Cir. Apr. 22, 2008) (citing 8 C.F.R. § 208.13(b)(2). A well-founded fear of future persecution can be established by "specific, detailed facts showing a good reason to fear that he will be singled out for persecution" on account of a protected ground. Ruiz v. U.S. Attorney Gen., 440 F.3d 1247, 1258 (11th Cir. 2006). As an alternative to demonstrating that he would be "singled out for persecution," an alien may show a pattern or practice in the subject country of persecuting members of a statutorily defined group of which the alien is a part. 8 C.F.R. § 208.13(b)(2)(iii). The alien must show that his fear of persecution is subjectively genuine and objectively reasonable. Ruiz, 440 F.3d at 1257. However:

> An applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality or, if stateless, another part of the applicant's country of last habitual residence, if under all the circumstances it would be reasonable to expect the applicant to do so.

8 C.F.R. § 208.13(b)(2)(ii).

Initially, the Petitioners fail to raise any arguments in their briefs concerning: (1) the denial of withholding of removal; (2) the denial of CAT relief; or (3) the BIA's denial of their motion to remand. Therefore, the Petitioners have abandoned those issues. See Sepulveda, 401 F.3d at 1228 n.2.

7

The Petitioners have failed to challenge the finding that they could safely relocate in both their appeal to the BIA and in their initial brief here on appeal and, instead, raise the issue for the first time in their reply brief. Thus, the issue of whether Petitioners could safely relocate within Peru is unexhausted and abandoned. See Al-Najjar, 257 F.3d at 1283 n.12 (noting that, when an issue, not raised before the BIA, is raised for the first time after the initial briefs on appeal, the unexhausted issue is deemed abandoned); see also 8 U.S.C. § 1252(d)(1); Amaya-Artunduaga v. U.S. Attorney Gen., 463 F.3d 1247, 1250-51 (11th Cir. 2006) (holding that we lacked jurisdiction to review an unexhausted issue even though the BIA sua sponte considered it).

The record does not compel reversal of the BIA's order affirming the IJ's denial of the Petitioners' application for asylum. Even assuming arguendo that the IJ erred by failing to consider the events that occurred before the Petitioners traveled to the United States in 2001, and that the Petitioners suffered past persecution based upon the cumulative effect of all the events to which they claimed occurred, the Petitioners did not have a well-founded fear of future persecution in light of the finding that they could avoid future persecution by relocating to another part of Peru. See 8 C.F.R. §§ 208.13(b)(1)(i)(B); see also 8 U.S.C. § 208.13(b)(2)(ii). As such, the Petitioners were not entitled to asylum because they were not "refugees" within the meaning of the INA. See 8 U.S.C.

8

§ 1101(a)(42)(A); see also Mejia, 498 F.3d at 1256.  Accordingly, as the unchallenged finding is dispositive of the Petitioners' claims, we need not address the Petitioners' other issues.

In light of the foregoing, the petition for review is

**DENIED**.